## GAMMAR & PRINDLE v. BORGAIN.

1. Contract: CHANGE OF PLACE OF PERFORMANCE: WARRANTY. A contract for the sale of a reaping machine named the place where the machine was to be delivered, and after setting out a warranty of the machine, provided that if it did not answer the warranty, it was, after notice, etc., to be returned to the town of C., free of charge. *Held*, that a delivery of the machine at a different place from that named in the contract, at the request and for the accommodation of the purchaser, was not such a departure from the contract as would release the purchaser from returning the machine, in case it failed to comply with the warranty, to C., as stipulated in the contract.

2. —— So, too, if there was a subsequent agreement or verbal change as to the place where the machine might be left in case it failed to comply with the warranty, this would not amount to such a new contract as would defeat an action based upon the original written one, any more than the change, with the purchaser's consent, as to the place where the machine was to be delivered in the first instance.

3. —— CONTRACT CONSTRUED. . The warranty contained in the contract of sale in the present case provided that the machine in question was "a good grain cutting machine," upon which *two experienced binders* could bind as much grain in one day as they could on the ground in two ; that it would save one-half the labor in binding," etc. *Held*, that the words "experienced binders" meant those accustomed and competent to do such work in the field, as grain is ordinarily cut and saved, and not such only as were experienced as binders upon this particular kind of a machine.

*Appeal from Butler District Court.*

FRIDAY, JUNE 24.

THE petition sets out that on the 3d of June, 1869, defendant made his order, in writing, for the shipment to him by rail to Cedar Falls, by the 1st of July following, a Marsh harvester, for which he was to pay, etc., provided it answered the warranty indorsed on said order. If it

Vol. XXVII. — 47

did not answer this warranty, after notice and trial, it was to be *returned to Cedar Falls free of charge.*

The warranty was that the harvester was well made, of good material, not liable to get out of order when properly used, to be a good grain cutting machine, upon which *two experienced binders will bind as much grain in one day, as they could on the ground in two*; that it would save one-half the labor in binding, etc. When tested, if the machine did not perform as warranted, the purchaser was to notify plaintiffs, or their agent, and to allow sufficient time to put it in repair. If after this it did not work, *from the fault of the machine*, it was to be either taken back and the money refunded, the defective part supplied, or a perfect machine given in its place.

. It is alleged that the machine was delivered and accepted under said order ; that it answered the warranty ; that plaintiffs were not notified of any failure; that defendant has not returned it to Cedar Falls, nor paid for the same.

The answer admits the order, but denies that any machine was received at *Cedar Falls*, at the time called for therein, or at any other time. It is then alleged that about July 6, 1869, defendant made a *verbal contract* with plaintiff's agents, for the delivery of a Marsh harvester at *New Hartford, Iowa,* that their agents warranted said machine (setting forth the warranty in substance, as in the written order). If it answered the warranty, he was to pay $225 (the same amount agreed to be paid by the writing) ; if not, he was to *leave it in the field,* notify the agents, who were to refund the money and take the machine away.

The answer then states that the machine was *not* made of good material — not a good grain cutting machine — avers notice, etc. Trial, verdict and judgment for defendant, and plaintiffs appeal.

Gammar & Prindle v. Borgain.

*Powers & Hemingway* for the appellants.

*A. F. Brown* for the appellee.

WRIGHT, J. — I. A material question on the trial of the cause was, whether the alleged failure of the machine to answer the warranty was the fault of the implement or defendant. To this point the testimony was largely directed. One point made on this appeal involves the correctness of the court's action in rejecting certain testimony offered by plaintiff upon this issue. Thus, they proposed to prove by several witnesses that they were acquainted with these harvesters; had used and owned them in 1867 and 1868, in the neighborhood of defendant's residence; regarded them as good grain cutting machines; that two experienced binders could do double the work upon them they could on the ground; that all the machines (those referred to by the witnesses and that delivered to defendant) were precisely alike, made by the same party, in the same shop, of the same material and workmanship, and that these others worked well and filled fully the conditions of the warranty; all of which testimony was rejected. As to the correctness or incorrectness of this ruling we are not in all respects agreed, and as the case must be reversed upon other grounds, and the question may not again arise, either upon the retrial, or in this court, we prefer to leave it undecided. And we are the more reconciled to this disposition of the case, as it is possible that the verdict turned upon other matters arising upon the instructions.

II. In view of the pleadings and evidence there is scarcely ground to believe that the machine was delivered upon any other than the written contract. The answer admits the order, but says the harvester was not received *at Cedar Falls at*

1. CONTRACT: change of place of performance: warranty.

*the time called for nor at any other time. A verbal agreement* is then set up, made *after* the written order, not essentially different, except as to the *place* where the machine was to be left if it failed to answer the purpose. But this is not alleged as a new and distinct agreement, nor is it averred that the machine was delivered under the same. That it was delivered at New Hartford, instead of Cedar Falls, is shown to have been for defendant's accommodation and at his request. The pretense, therefore, that there was, in this respect, a departure from the written contract, is without foundation either in fact or in law. It was a part of defendant's undertaking, by the written order, to return the machine to Cedar Falls if it failed to answer the warranty. An instruction asked by the plaintiff, that it should have been thus returned, if received under such order, though delivered at New Hartford instead of Cedar Falls, was proper and should have been given. *Bomberger et al.* v. *Griener*, 18 Iowa, 477. Then, too, if the machine was delivered upon this order, and, subsequent to its execution, there were additions made to it, by parol, plaintiffs could still recover. . That is to say, these additions to the written warranty, any further agreement as to where the machine might be left, or the like, would not make a new contract, and would not defeat the action, though plaintiffs declare upon the written or original contract, any more than the change in the place of delivery by the plaintiff, with defendant's consent. And this should have been clearly stated to the jury. Upon this point it is quite probable, and indeed almost certain, the jury were misled.

III. The court instructed that the term " experienced binders," as expressed in the warranty, meant " experi-

3. —— contract enced in binding *on the ground*, and not expericonstrued.     enced *in binding on the Marsh Harvester*." To this construction of the language used in the warranty,

appellants object. In our opinion the instruction was correct. The machine was for use in the harvest field. It was to be used by the purchaser with hands such as are ordinarily and usually found and employed in our harvests. It was not contemplated that persons *skilled* in binding *on these machines* should accompany and assist in running the same, if such skill is requisite, as seems probable from the position assumed by plaintiffs. Defendant was not bound to hunt for those, if any, peculiarly conversant with these machines and having special knowledge of how to bind on the same.

"Experienced binders," without other words to qualify or limit their meaning, means those accustomed to do such work, and having the requisite knowledge, in the field, as grain was and is ordinarily cut and saved. Defendant, it is fair to presume, could secure such experience, whereas those experienced as binders *upon the machine* would be most difficult to obtain. The fair and reasonable view of the contract was therefore taken of it by the court. And yet it is proper that the jury should understand that a failure by " experienced binders," as thus explained, to *at once* do the double work spoken of, would not show, as of course, a breach of the warranty. A fair opportunity should be given for them to become accustomed to the new position, and to familiarize themselves with the motion and working of the machine.

We only add that, in determining whether the machine did or did not work well, the jury might appropriately give more weight to the testimony of those engaged in the actual test, those who were present and witnessed its work, than those who testify of its possible workings from an examination and comparison of it with other machines.

And yet, so far as such weight might be left to depend upon the relative opportunities of witnesses to judge, it would be just as true that, other things being equal,

the larger and more extensive the experience of a witness, the greater the reliance to be placed upon his opinion or judgment.

Because of the errors above noticed the judgment is

Reversed.